Steven M. Kaplan, Esq. (SK 6909)
Kaplan Kravet & Vogel, P.C.
  *Attorneys for General Trading Co., Inc.*
  *and Grocery Leasing Corp.*
630 Third Avenue
New York, New York 10017
(212) 983-6900

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
In Re:                                                             **Chapter 11**

145 FOOD CENTER, INC.,
                                                                          **Case No. 15-45189(CEC)**
                  Debtor.
-------------------------------------------------------------X

**GENERAL TRADING CO., INC. AND GROCERY LEASING, CORP.'S RESPONSE IN OPPOSITION TO THE DEBTOR'S MOTIONS ON SHORT NOTICE (I) TO USE CASH COLLATERAL; (II) TO AUTHORIZE MAINTENANCE OF PRE-PETITION BANK ACCOUNTS; AND (III) TO EXTEND DEADLINE TO FILE SCHEDULES**

General Trading Co., Inc. ("GTC") and Grocery Leasing Corp. ("GLC"; GTC and GLC are collectively referred to as "General"), through its undersigned counsel, respectfully submits this Statement in Response to the motions of 145 Food Center, Inc. ("Debtor" or "145 Food") seeking an order (i) permitting the use of cash collateral, (ii) authorizing the maintenance of pre-petition bank accounts, and (iii) extending the deadline to file schedules.

**INTRODUCTION**

1.	The Debtor's filing of a Chapter 11 petition (the "Petition") was an unauthorized, bad faith filing seeking only to derail the pending holdover proceeding in landlord tenant court to remove Nicholas Pichardo ("Pichardo") from possession of the grocery store premises located at 145-44 Farmers Boulevard, Queens, NY (the "Store"). As detailed below, Pichardo – the sole signatory of the Petition and all of the accompanying filings -- is a former employee of the Debtor who is neither a shareholder, director nor officer of the Debtor. A cursory review of the

Petition and accompanying documents reveals that Pichardo himself executed both the "Statement Regarding Authority to Sign and File Petition" in his purported capacity as "president" of the Debtor, as well as the "Resolution of the Board of Directors of 145 Food Center, Inc." – also in his purported capacity as "president." However, Pichardo is not, and never was, a shareholder or director of the Debtor, he does not even claim to be one in the Resolution. As is demonstrated below, the only shareholder, officer and director the Debtor is Rolando Abreau ("Abreau"). As a result, the Petition is a sham and should be dismissed out of hand.

2. Further compounding the infirmities with the Debtor's filing is the fact that Abreau – in his express capacity as "sole shareholder, officer and director" of the Debtor – voluntarily surrendered the Store, the lease to the Store, and 100% of its assets to General pursuant to a written Peaceful Surrender Agreement (the "Peaceful Surrender Agreement") on March 15, 2015. A copy of the Peaceful Surrender Agreement is annexed hereto as **Exhibit A**.

3. Pursuant to a Collateral Assignment of Lease and Condition Assumption dated October 13, 2014, GLC assumed the Store lease and became the sole tenant thereunder on April 27, 2015, and remains the sole tenant to date. Thus, the Debtor has, and since March 2015 has had, no interest in the Store, the Lease or the contents of the Store.[1]

4. According to the Debtor, it filed the Petition "in the abundance of caution . . . to protect its rights under the Lease". However, the Debtor has been defeased of any interest in the

---

[1] As explained below, GLC permitted Pichardo, in his individual capacity, to operate the Store on a bare bones basis pursuant to a verbal license agreement simply to protect the value of General's collateral since the Peaceful Surrender Agreement (i.e. by keeping the Store open) until a substitute operator for the Store could be located by General. If the Store closed in March 2015 without having located a new operator, the inventory would perish and the Store lease would become worthless. Thus, by permitting Pichardo to operate the store on an interim basis, General was acting in both its interests, as well as the interests of the Debtor and its true principals who signed personal guarantees for the debts of the Debtor.

Lease, the Store and any of its contents since the Peaceful Surrender Agreement in March and the subsequent assignment of the Lease to GLC on April 27, 2015.

## BACKGROUND

5. General is in the business of the wholesale supply of groceries, dairy, deli and other food products to supermarkets, grocery stores and bodegas. In connection with its business, GTC extends credit to its customers so that they can acquire and build-out their retail stores, and subsequently stock the stores with inventory to support their operations.

6. In October 2014, Abreau – as the sole shareholder, officer and director of 145 Food – approached GTC so that it could open the Store. GTC agreed and opened a credit facility. In order to secure 145 Food's payment obligations, 145 Food executed, among other things, the following relevant documents:

> (a) A Security Agreement (the "Security Agreement") dated October 13, 2014 whereby 145 Food granted GTC a first, priority lien on <u>all</u> of its current and future assets. A copy of the Security Agreement is annexed hereto as **Exhibit B**. The Security Agreement was executed by Abreau, as President. Pursuant to the Security Agreement, on November 4, 2014 GTC duly filed a UCC-1 financing statement under File No. 201411046173750.
>
> (b) A Collateral Assignment of Lease and Conditional Assumption (the "Collateral Assignment") dated October 13, 2014 whereby 145 Food assigned to GLC all of its rights, title and interest in the lease to the Store (the "Lease"), which would automatically be assigned to GLC upon GLC sending a notice to the landlord of the Store that GLC was exercising its rights under the

Collateral Assignment. The landlord is a party to the Collateral Assignment. A copy of the Collateral Assignment is annexed hereto as **Exhibit C**.

(c) A Stock Pledge Agreement (the "Stock Pledge") dated October 13, 2014 whereby Abreau – as *sole stockholder of 145 Food* -- pledged 100% of the shares of 145 Food to GTC in order to secure 145 Food's and Abreau's obligations to General (Abreau and his wife also executed written personal guarantees of 145 Food's obligations to General). A copy of the Stock Pledge is annexed hereto as **Exhibit D**. Pursuant to the Pledge Agreement and article 9 of the NY UCC, the *original* stock certificates (in duplicate) for 145 Food are being held by GTC and copies thereof are annexed hereto as **Exhibit E**.

(d) A Joint Consent of the Shareholder and Director of 145 Food (the "Joint Consent") dated October 13, 2014, whereby Abreau – expressly representing himself to be the *sole shareholder and director of 145 Food*, authorized Abreau, as president of 145 Food, to execute all of the loan and security agreements in favor of General. A copy of the Joint Consent is annexed hereto as **Exhibit F**.

7. At least as early as January 2015, 145 Food defaulted in its payment obligations to GTC.[2] Acknowledging its default and that 145 Food had no defenses to the various loan and collateral agreements, Abreau executed the Peaceful Surrender Agreement whereby, among other things:

(a) 145 Food acknowledged that Events of Default occurred under its loan and collateral agreements with General;

---

[2] 145 Food owes GTC in excess of $150,000, excluding the even larger amounts it owes to Noah Bank, another secured creditor. GTC is taking the lead on enforcing the rights against all collateral pursuant to a written Intercreditor Agreement between General and Noah Bank.

(b) 145 Food had no defenses to the enforcement of such documents and liens, and all rights of redemption and reinstatement were waived;

(c) 145 Food surrendered peaceful possession of all of the inventory, furniture, fixtures and assets in the Store to GTC for GTC to hold, preserve and sell to a third party;

(d) 145 Food surrendered to GLC all of its right, title and interest in the Lease and the right to occupy the Store and agreed to immediately vacate the Store – which 145 Food did, in fact, do;

(e) 145 Food acknowledged that **"there is no reasonable prospect for [it] to be reorganized under the provisions of Title 11 of the United States Bankruptcy Code…" and it will be "unable to provide GTC with adequate protection pursuant to §362 of the Bankruptcy Code"**;

(f) Abreau – again – represented that he was the *sole* director and officer of 145 Food. The Peaceful Surrender Agreement was also executed by Abreau and his wife, Fiordaliza Abreau personally because they both executed personal guarantees to GTC.

8. By letter dated April 27, 2015 (the "Notice of Exercise"), GTC formally exercised its right under the Collateral Assignment to assume the Lease by sending written notice to the landlord under the Lease. A copy of the Notice of Exercise is annexed hereto as **Exhibit G**.

9. As a result of the foregoing, and regardless of whether Pichardo has any legal affiliation with 145 Food whatsoever, 145 Food was divested of any interest it may have had in the Store, the Lease and all of the assets in the Store; and none of them are assets of the Debtor or part of the Estate.

{00123895.2 / 1110-021 }

10. At the time General regained possession of the Store, it had not yet located a new operator to sell the Store and the collateral to. Because the Store (a) has perishable goods in it, and (b) the Store and Lease will lose their value if the Store closes down, General had an obligation (and incentive0 to preserve its collateral, and offered to permit Pichardo – who was a former employee and store manager of 145 Food – to operate the Store in his individual capacity pursuant to a verbal license until a new operator was located. As noted above, this was simply an interim, short term measure to keep the Store open so that the inventory did not perish and the value of the Lease could be preserved.

11. Since then, Pichardo applied to Noah Bank to obtain a loan to purchase the Store from General. Notably, Noah Bank advised GTC that the loan application was NOT made in the name of 145 Food.[3] Ultimately, that loan was rejected by Noah Bank.

12. In response to his inability to borrow money to purchase the Store, Pichardo hatched a scheme to try and steal it from General – for free. He apparently spoke with the landlord of the Store and convinced him to accept <u>cash</u> payments of rent directly from Pichardo, and to reject the monthly payments of rent which have been, and continue to be, tendered by GLC under the Lease. Each and every monthly rent payment from GLC has been rejected by the landlord as part of this scheme.

13. As a result, GLC provided Pichardo with a 10-day notice to of termination (the "Notice of Termination") of the verbal license agreement permitting him to occupy the Store. A copy of the Notice of Termination is annexed hereto as **Exhibit H**.

14. More than 10 days elapsed since the Notice of Termination, and GLC then commenced a holdover proceeding in the Queens County Civil Court (the "L&T Action").

---

[3] GTC is working to get a copy of the loan application from Noah Bank and will present same to the Court if and when it is received.

15. As a bad faith attempt to derail or stall the L&T Action, Pichardo filed the Petition, purporting to act on behalf of 145 Food.

## ARGUMENT

### THE PETITION IS A NULLITY AND WAS NOT FILED WITH THE AUTHORITY OR CONSENT OF THE DEBTOR'S SOLE SHAREHOLDER OR DIRECTOR

16. As is plainly evident from the all of the loan and security agreements referenced above, as well as the documents referenced below, Pichardo is neither an officer, director nor shareholder of 145 Food. Indeed, he is a juridical stranger to 145 Food, who filed the Petition without authorization and in bad faith, solely to attempt to get the benefits of the automatic stay in the L&T Action – which cannot apply to the L&T Action because 145 Food is not a party in interest to the L&T Action, which was filed *solely* against Pichardo.

17. Attached hereto as **Exhibit I** is a printout from the New York State Secretary of State printed earlier today. It shows that Abreau, and not Pichardo, is the "Chief Executive Offer" of the company. Pichardo is not listed at all.

18. In addition, Pichardo cannot be a shareholder, officer or director of 145 Food. Annexed hereto as **Exhibit J** is a copy of the New York State Liquor Authority beer and wine license for 145 Food. Nowhere is Pichardo listed as an owner, officer, director or principal. Upon information and belief, Pichardo would be committing a criminal offense if he was a shareholder, officer or director of 145 Food and not included on the liquor license.

19. According to Debtor's motion, it seeks to maintain its existing bank accounts in order to maintain continuity with its vendors and the NYS WIC Program – sometimes informally referred to as "food stamps". Upon information and belief, 145 Food's registration with NYS WIC requires that each of the principals be disclosed on the WIC application and registration, and that each be fingerprinted, pass a criminal background check, and be approved by NYS.

- 7 -

- 8 -

Upon information and belief, Pichardo was never disclosed or included on 145 Food's WIC authorization as an officer, director or shareholder of 145 Food, nor did he complete the requisite fingerprinting or background checks. This too precludes any assertion that Pichardo has any authority to act on behalf of 145 Food, or to sign or file the Petition on its behalf.

20. It should come as no surprise that the Petition was signed solely by Pichardo in his purported capacity as "president", as was the "Statement Regarding Authority to Sign and File Petition" in his purported capacity as "president" of the Debtor, as well as the "Resolution of the Board of Directors of 145 Food Center, Inc." – also in his purported capacity as "president". Nowhere, does it indicate that Pichardo is actually a director of 145 Food, or that Abreau is even aware of the bankruptcy filing. And that is because Pichardo has no such authority and the Petition is fatally defective.

21. For these reasons, the Petition should be dismissed out of hand, and all of the relief sought by the Debtor in its motions should be denied.

**THE DEBTOR IS NOT IN POSSESSION OF THE STORE, HAS NO INTEREST IN THE LEASE OR THE CONTENTS OF THE STORE AND CANNOT POSSIBLY REORGANIZE OR LEGALLY CONDUCT ITS BUSINESS**

22. As explained above, the Debtor's sole officer, director and shareholder long ago surrendered any interest the Debtor had in the Store, the Lease or any of the assets. Therefore, the Debtor cannot (by its own admission) possibly re-organize or even legally operate its business. Indeed, this whole case represents Pichardo's attempt to steal General's assets and operate the Store as a squatting pirate for as long as possible.

23. Also, by the Debtor's own admission, it cannot possibly grant GTC adequate assurances or protection. As noted above, it is not legally operating or occupying the Store. The Debtor long ago surrendered the Store, the Lease and all of the assets to GTC.

24. In its motion, the Debtor half-heartedly, and without any explanation or support whatsoever, states that "while the Debtor believes that [the Ten Day Notice] and the Peaceful Surrender Agreement referenced therein, which may have been executed in favor of [GTC] is, among other things, avoidable as an improper fraudulent conveyance, in the abundance of caution, the Debtor filed its instant Chapter 11 proceeding to protect its rights under the Lease." Of course, no explanation – let alone a logical one – is offered for why the Peaceful Surrender Agreement could possibly constitute a "fraudulent conveyance", when GTC is the first, priority, secured creditor of 145 Food and merely exercised its contractual and statutory rights by taking the Store, the Lease and the collateral.

25. As a result, the Court should dismiss the Petition and deny all of the relief sought in the Debtor's motions.

Dated: New York, New York
      November 23, 2015

                                          KAPLAN KRAVET & VOGEL, P.C.
                                          *Attorneys for General Trading Co., Inc. and*
                                          *Grocery Leasing Corp.*

By: _____
      Steven M. Kaplan (SK 6909)
  630 Third Avenue
  New York, New York 10017
  (212) 983-6900